[Cite as *State v. Jones*, 2016-Ohio-5387.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 16AP-13 |
| v. | : | (C.P.C. No. 13CR-2345) |
| Antonio Jones, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on August 16, 2016

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Seth L. Gilbert*, for appellee.

**On brief:** *Antonio Jones*, pro se.

APPEAL from the Franklin County Court of Common Pleas

BRUNNER, J.

{¶ 1} Defendant-appellant, Antonio Jones, appeals a decision of the Franklin County Court of Common Pleas issued on December 18, 2015, denying his motion for leave to file a delayed motion for a new trial. Because we find that Jones did not show that he was prevented from discovering the evidence he seeks to use to support his delayed motion for a new trial, we agree that the motion for leave to file a delayed motion for a new trial was properly denied. We therefore affirm.

I. FACTS AND PROCEDURAL HISTORY

{¶ 2} We have previously recounted the history of this case as follows:

By indictment filed May 2, 2013, plaintiff-appellee, State of Ohio, charged Jones with one count of murder, in violation of R.C. 2903.02, an unclassified felony, with an accompanying firearm specification and repeat violent offender specification; one count of felony murder, in violation of R.C. 2903.02, an unclassified felony, with an accompanying firearm

No. 16AP-13

specification and repeat violent offender specification; one count of tampering with evidence, in violation of R.C. 2921.12, a third-degree felony, with an accompanying firearm specification; and one count of having a weapon while under disability, in violation of R.C. 2923.13, a third-degree felony, with an accompanying firearm specification. All the charges related to the shooting death of James Edward Lane on April 20, 2013. Jones entered a plea of not guilty to all charges.

Jones elected to waive his right to a jury trial for Count 4 of the indictment, having a weapon while under disability, and have a bench trial for that charge only. As to the other three charges contained in the indictment, a jury trial commenced June 23, 2014. Officer Trevor Wolfe of the Columbus Division of Police testified that on the night of April 20, 2013, he responded to a dispatch of a shooting to 764 St. Clair Avenue, the location of the Happy Family Bar. When he arrived, he saw Lane with an obvious gunshot wound lying on the ground near a food truck parked at the bar's patio, and Officer Wolfe called for a medic. Officer Wolfe secured the scene until the detectives arrived.

Darren Cunningham, who worked security for the Happy Family Bar, was working the night of the shooting. Though he did not witness the actual shooting, Cunningham testified that an hour prior to the shooting, Jones came into the bar wearing a New York Yankees jacket, was "very amped up," and did not want Cunningham to pat him down. (Tr. Vol. II, 54.) At that time, Cunningham said Jones did not have a weapon on him. Cunningham said that he kept a close eye on Jones while he was in the bar because Jones "kept running back and forth in and out of the door," and he did that "about five or six times consecutively in maybe a ten-minute period." (Tr. Vol. II, 55.) Cunningham said a man inside the bar kept telling Jones to "just calm down." (Tr. Vol. II, 56.) Cunningham described Jones' behavior while he was inside the bar as "very agitated." (Tr. Vol. II, 56.) When Jones left the bar for the last time, Cunningham followed him outside, but he did not see Jones in the parking lot, so he assumed Jones had left for good. Approximately 20 minutes later, Cunningham saw a large crowd of people "stampede in the back door," so Cunningham went outside and saw Lane lying outside on the ground by the patio's back gate. (Tr. Vol. II, 56.)

Vernice Hill, Jones' cousin, testified that she knew Lane as a friend of her mother's, and that she learned that Lane had

No. 16AP-13

been shot on April 21, 2013 because her mother told her. Hill said that approximately 24 hours after the shooting, Jones came to her house wearing a New York Yankees jacket, "sweating real bad," and told her that he "shot somebody" at the Happy Family Bar. (Tr. Vol. II, 92.) Jones did not tell Hill who he had shot, but he indicated he "had some problems with another man." (Tr. Vol. II, 94.) Hill testified that Jones did not say anything to her about anyone pointing a gun at him or threatening his life before the shooting. Jones told Hill he planned to go to Georiga[sic] "to get away from him doing the shooting." (Tr. Vol. II, 94.) While he was at her home, Jones placed a gun in a cabinet under Hill's kitchen sink. He also took off his New York Yankees jacket and placed it on the back of a chair. Jones asked Hill if he could take a shower at her house, and Hill agreed. When Jones was in the shower, Hill went over to her mother's house, and then she returned to her house where Jones was "starting to lay on the couch." (Tr. Vol. II, 99.) Around 7:00 in the morning, Hill went back to her mother's house where she called the police. Police came to Hill's house and arrested Jones. Following Jones' arrest, the police searched Hill's home and recovered the gun and the jacket.

Christopher Lewis, who was operating a food truck outside of the Happy Family Bar on April 20, 2013, testified that prior to the shooting, he saw Jones wearing a New York Yankees jacket, and he saw him get a gun out of the trunk of a car and place it in his pants. Lewis said Jones then went through the patio gate and into the bar. A few minutes later, Lane came to Lewis' food truck and ordered some food. Lewis had just turned around to face Lane when he saw Jones with the gun and then heard "maybe five, six shots." (Tr. Vol. II, 121.) Lewis testified he did not hear any arguments or threats just prior to the shooting. Lewis hid behind his barbeque smoker for a brief time, then came out and saw Lane on the ground saying "I'm hit, I'm hit." (Tr. Vol. II, 124.) Lewis saw Jones run away from the parking lot after the shooting toward St. Clair Avenue. Lewis did not see anyone other than Jones with a gun and said no one else fired a gun that night. On cross-examination, Lewis said it was possible he was mistaken about how many shots he heard that night.

Detective Lowell Titus of the Columbus Division of Police's assault squad testified he responded to the Happy Family Bar the night of the shooting because homicide detectives initially thought Lane had stabilized and would survive his injuries. Detective Titus said he spoke with the owner of the Happy

Family Bar in order to obtain the surveillance video of the inside of the bar, the patio, and the parking lot. Detective Titus testified he spoke with Hill, and based on the information Hill provided to him, Detective Titus filed a warrant for Jones' arrest. After reviewing the surveillance video from both inside and outside the bar, Detective Titus said he did not see anyone pull a gun on Jones. The state played the surveillance video of the parking lot and patio area in court for the jury to see. The video showed Jones walking toward a group of three people, then Jones walking away from the group. The video further showed that Jones was facing away from the direction he ultimately fired when he pulled the gun out, and he then turned back around with the gun before firing. Detective Titus could not tell from viewing the video how many times Jones fired his gun.

During Detective Titus' testimony, the state played the audio recording of Detective Titus' interview with Jones following his arrest. Jones said during the interview that he had problems with a man at the Happy Family Bar. Jones said that 25 or 30 minutes before the incident occurred, the man pulled a gun on him. He said that he was outside when the man "jumped" him, so Jones reached for his gun and shot the man, though Jones said "the bullet wasn't meant for the dude" and that he hit the wrong guy. (Tr. Vol. III, 182.) Jones said he only fired his gun one time. Jones told Detective Titus that the man he had been aiming for took off running after Jones fired his weapon. Jones said he did not know who any of the men were that he argued with at the bar. Jones said he stashed his gun in the bushes while he was inside the bar, then retrieved it from the bushes when he needed it.

Kenneth Gerston, M.D., a deputy coroner with the Franklin County Coroner's Office, testified that Lane died from a gunshot wound. The bullet entered Lane's body through his right arm and traveled into the right side of his chest. Mark Hardy, a forensic scientist with the Columbus Division of Police, testified that he analyzed the spent projectile recovered from Lane's body and that the spent projectile matched the gun police recovered from underneath Hill's sink.

Jones testified in his own defense. Jones stated he had often been on the receiving end of violence, saying he had been shot 12 times, stabbed 3 times, and run over by a vehicle 1 time, resulting in many hospitalizations. Turning to the events of April 20, 2013, Jones testified that he was arguing with someone at the Happy Family Bar and that the man showed

him a pistol. Because of his history of being a victim of violence, Jones said he did not want to leave after seeing the man's gun because he was "scared." (Tr. Vol. IV, 264.) Instead of leaving, Jones said he went outside and retrieved his own gun and "put it on [his] waistline." (Tr. Vol. IV, 265.) When he encountered the man again, Jones said the man told him "I'm going to kill you." (Tr. Vol. IV, 265.) Jones said he started to walk away but he saw the man reaching and he saw a "brown handle," so Jones grabbed his gun and fired a shot because he has "been going through a lot in [his] lifetime and [he] learned about turning [his] back." (Tr. Vol. IV, 265.) He said he "wasn't trying to hurt nobody," but that his "life was on the line," so he did "what [he] had to do." (Tr. Vol. IV, 265.) Jones denied ever telling Hill he planned to get out of Columbus after the shooting. On cross-examination, Jones said he "hit the wrong guy" when he fired his gun. (Tr. Vol. IV, 292.)

Following deliberations, the jury returned guilty verdicts for both murder counts and the tampering with evidence count, as well as the accompanying firearm specifications. The parties stipulated to Jones' prior convictions, and the trial court found Jones guilty of having a weapon while under disability and the repeat violent offender specifications. Following a sentencing hearing on September 12, 2014, the trial court merged Count 2, felony murder, into Count 1, murder, and sentenced Jones to an aggregate sentence of 33 years to life. The trial court journalized Jones' convictions and sentence in a September 15, 2014 judgment entry.

*State v. Jones*, 10th Dist. No. 14AP-796, 2015-Ohio-2357, ¶ 2-11.

{¶ 3} On July 28, 2015, Jones filed a motion for a new trial. The State filed a memorandum in opposition on August 11 pointing out that Jones' motion was untimely and he had not sought leave. Thus, on August 25, Jones filed a motion for leave to file a motion for a new trial. In it, Jones explained that while his trial attorney apparently had a full copy of discovery in the case, the attorney did not share all of it with Jones personally. The State did not file a renewed opposition.

{¶ 4} On December 18, 2015, the trial court denied the motion for leave, reasoning that the evidence could not be newly discovered if the defense had it (even if Jones himself had not personally seen it). Having reached that conclusion, the trial court also held that the new trial motion was moot. Jones now appeals.

No. 16AP-13

## II. ASSIGNMENT OF ERROR

{¶ 5} Jones assigns a single error for our review:

THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR LEAVE TO FILE MOTION FOR NEW TRIAL.

## III. DISCUSSION

{¶ 6} "We review a court's denial of a motion for leave to file a delayed motion for new trial under an abuse of discretion standard." *State v. Bass*, 10th Dist. No. 13AP-1052, 2014-Ohio-2915, ¶ 13; *see also State v. Townsend*, 10th Dist. No. 08AP-371, 2008-Ohio-6518, ¶ 8.

{¶ 7} Ohio Rule of Criminal Procedure 33 sets forth the bases upon which one may obtain a new trial in relevant part as follows:

(A) **Grounds.** A new trial may be granted on motion of the defendant for any of the following causes affecting materially his substantial rights:

* * *

(6) When new evidence material to the defense is discovered, which the defendant could not with reasonable diligence have discovered and produced at the trial.

(Emphasis sic.) The rule also sets forth the timing for motions for new trials:

(B) **Motion for new trial; Form, Time**.

* * *

Motions for new trial on account of newly discovered evidence shall be filed within one hundred twenty days after the day upon which the verdict was rendered, or the decision of the court where trial by jury has been waived. If it is made to appear by clear and convincing proof that the defendant was unavoidably prevented from the discovery of the evidence upon which he must rely, such motion shall be filed within seven days from an order of the court finding that he was unavoidably prevented from discovering the evidence within the one hundred twenty day period.

(Emphasis sic.)

{¶ 8} In short, in order to be timely without the need to show unavoidable prevention, a motion for a new trial made "on account of newly discovered evidence shall

No. 16AP-13

be filed within one hundred twenty days after the day upon which the verdict was rendered." Crim.R. 33(B). The jury returned guilty verdicts in Jones' case on June 26, 2014, and the trial court found Jones guilty of the weapon under disability offense at a hearing on September 12, 2014. As Jones did not attempt to file a motion for a new trial until late July 2015, he is well beyond the 120-day time limit set forth in Crim.R. 33. Thus, he could only successfully seek leave to file a motion for a new trial if he showed "by clear and convincing proof that he was unavoidably prevented from the discovery of the evidence pursuant to Crim.R. 33(B)." *Townsend* at ¶ 7.

{¶ 9} Jones argued that he, personally, did not know what was in the various police reports that were in possession of his counsel and thus did not, before now, have a basis for filing a motion. Even if true, this does not mean that the reports are "newly discovered evidence" within the meaning of the rule. Newly discovered evidence for purposes of Crim.R. 33(A)(6) is evidence "which the defendant could not with reasonable diligence have discovered and produced at the trial." These reports were turned over to the defense in discovery. This is a fact even Jones does not deny. Since the defense had the reports, they could have "discovered and produced [them] at trial." Crim.R. 33(A)(6). We acknowledge that the documents in question are marked "<u>COUNSEL ONLY</u>" and thus would not have been shared with Jones personally pursuant to Ohio Rule of Criminal Procedure 16(C). The fact that defense counsel was not permitted to actually show them to Jones does not mean that Jones, as a represented "party" was "unavoidably prevented from [] discover[ing]" them—they were in the defense attorney's possession. *State v. D.M.*, 10th Dist. No. 15AP-603, 2015-Ohio-4257, ¶ 11; *State v. Wilson*, 10th Dist. No. 02AP-1350, 2003-Ohio-5892, ¶ 12; Crim.R. 33(B).

{¶ 10} Jones did not file within the 120-day time limit and failed to show that the evidence was such that "the defendant could not with reasonable diligence have discovered and produced [it] at the trial" or that he was "unavoidably prevented from the discovery of the evidence." Crim.R. 33(A)(6) and (B). The trial court was correct to have denied Jones leave to file a delayed motion for a new trial and, having decided that issue, the trial court was also correct in finding that the motion for a new trial was moot. We overrule Jones' single assignment of error.

No. 16AP-13

## IV. CONCLUSION

{¶ 11} Because Jones' own motions make clear that the defense had the documents which he claims are new evidence (since they were marked, "<u>COUNSEL ONLY</u>"), even though Jones was personally unaware of their contents, he cannot show under case law precedent that the evidence was new evidence in the relevant sense or that he was unavoidably prevented from discovering the evidence. Jones' motion for leave to file a delayed motion for a new trial was properly denied. We therefore affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BROWN and KLATT, JJ., concur.

_____