[Cite as *State v. Dye*, 2024-Ohio-3191.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 113356 |
| v. | : | |
| DESHAWN DYE, | : | |
| Defendant-Appellant. | : | |

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** August 22, 2024

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-99-385887-ZA

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Saleh Awadallah and Anthony T. Miranda, Assistant Prosecuting Attorneys, *for appellee*.

Kimberly Kendall Corral, *for appellant*.

FRANK DANIEL CELEBREZZE, III, J.:

{¶ 1} Appellant Deshawn Dye ("appellant") challenges the judgment of the Cuyahoga County Court of Common Pleas denying his petition for postconviction relief. After a thorough review of the applicable law and facts, we affirm the judgment of the trial court.

## I. Factual and Procedural History

{¶ 2} The underlying facts of this matter were outlined in appellant's direct appeal as follows:

> On October 1, 1999, the appellant shot and killed twenty-one year old Gregory Smith at close range as Smith was sitting in his car. Appellant fled the scene, but turned himself in at the Sixth District police station the next day after learning through his stepfather that the police were seeking him for questioning. On the same day, October 2, 1999, a complaint of murder had been brought against the appellant in the Cuyahoga County Court of Common Pleas — Juvenile Division — as the appellant was only seventeen years old at the time. In his statement to the police, the appellant admitted that he was the person holding the gun when it fired at close range into the [victim's] head, but stated that the weapon had discharged accidentally when the victim swung his hand out and hit the gun.

*State v. Dye*, 2001 Ohio App. LEXIS 2081, *1-2 (8th Dist. May 10, 2001).

{¶ 3} Appellant was charged with one count of murder, along with a firearm specification, and one count of having a weapon while under a disability. At trial, the State presented evidence refuting the idea that the shooting was accidental, including the testimony of one of appellant's friends. He testified that appellant and the victim did not get along and relayed that earlier on the night of the shooting, appellant did not shake hands with or greet the victim. He also stated that he witnessed appellant standing on the driver's side of the victim's vehicle, arguing with the victim.

{¶ 4} The State further presented evidence regarding the trajectory the bullet traveled through the victim's head and evidence showing the distance between the muzzle of the rifle and a "do rag" worn on the victim's head.

{¶ 5} Appellant's cousin testified on his behalf, stating that she had seen appellant and the victim together two months prior to the shooting and that there was no animosity between them. Appellant also presented the testimony of another friend, who stated that the victim and appellant were "cool" and had no hostility between them. He maintained that the victim, appellant, and several others had been hanging out together earlier the day of the shooting. He did not see the shooting but heard the gunshot and saw appellant screaming and crying and said that he thought he shot the victim.

{¶ 6} Appellant testified on his own behalf and described how he was standing when the gun discharged. He maintained that he had picked up the gun off the ground and went to talk to the victim, who then took the gun and began playing with it. Appellant stated that the victim handed the gun back to him and that he was standing with his foot propped on the victim's car door frame. He stated that the gun was resting on his knee while he spoke with the victim. Appellant claimed that his finger was not on the trigger and that the victim swung his hand out, hitting the gun, and it discharged.

{¶ 7} The jury found appellant guilty of murder and having a weapon while under a disability as well as the accompanying firearm specification. The trial court sentenced appellant to 15 years to life on the murder charge, and three years on the firearm specification to run consecutively. The court also imposed a term of six months on the count of having a weapon while under a disability to be served concurrently with the other sentences imposed for a total of 18 years to life.

{¶ 8} In his direct appeal, this court overruled all of appellant's assigned errors and affirmed his conviction. *Id.*, 2001 Ohio App. LEXIS 2081.

{¶ 9} In 2019, appellant filed a petition for postconviction relief under R.C. 2953.21. His petition asserted that his constitutional rights were violated when (1) the prosecutor failed to provide available exculpatory evidence during pretrial discovery; and (2) his trial counsel was ineffective by failing to investigate fact witnesses and failing to offer expert testimony to rebut the testimony of the State's firearms expert witness.

{¶ 10} Appellant asserted in his petition that the State failed to provide him with favorable evidence in the form of (1) a supplementary police report, (2) a detective's October 6 report containing a statement by "Butter," the brother of the victim, (3) a statement made by Mason Jolly, who witnessed the shooting, (4) a statement made by the victim's girlfriend to police, and (5) certain redacted records relating to another eyewitness, Andre Maiden.

{¶ 11} The trial court allowed discovery related to the petition and held a two-day hearing. The court eventually denied the petition in an extensively written opinion.

{¶ 12} In denying appellant's petition, the trial court determined that appellant had not been unavoidably prevented from discovering the facts upon which he relied in his petition and, thus, he had not met the jurisdictional prerequisite under the statute since his petition was filed beyond the statutory timeframe.

{¶ 13} Despite this finding, the trial court went on to make findings of fact and conclusions of law on the merits of appellant's petition. The court found that (1) appellant's claim that his trial counsel was ineffective for failing to retain a firearms expert for consultation or testimony at trial was barred by res judicata; (2) his claim that his trial counsel was ineffective for failing to investigate Mason Jolly (a witness to the shooting) and not using him as a witness at trial had no merit because he did not demonstrate that the result of the trial would have been different; and (3) the record did not demonstrate that the State suppressed evidence in violation of *Brady*, and even if the evidence had been disclosed to appellant, the record did not support a finding that the result of the trial would have been different.

{¶ 14} Appellant then filed the instant appeal, raising 16 assignments of error for our review:

> 1. The trial court abused its discretion when it issued an opinion that entirely ignores the hearing held on petitioner's post-conviction claim and fails to consider any evidence presented at that hearing.
>
> 2. The trial court established that petitioner met the standard of "unavoidable prevention" when it entertained Dye's petition, granted petitioner Dye a hearing, and exercised jurisdiction rendering it the law of the case.
>
> 3. R.C. 2953.23 is ambiguous and must be interpreted in favor of the petitioner.
>
> 4. The court abused its discretion, violating petitioner's due process rights, when it arbitrarily shifted petitioner's burden after the hearing.
>
> 5. The trial court abused its discretion when it subsequently claimed, in its judgment entry that petitioner did not establish that he was unavoidably prevented from discovering the evidence within 365 days of the filing of his transcript.

6.  The trial court abused its discretion when it relied on numerous "statements of law" which are inconsistent with or contradicted by controlling case law.

7.  The trial court abused its discretion in denying relief based on res judicata as claims of ineffective assistance of counsel are not barred by res judicata where they rely on evidence outside the trial record.

8.  The trial court abused its discretion when it determined that trial counsel was not ineffective for failing to interview witness, Mason Jolly.

9.  The trial court abused its discretion when it identified in a post-conviction conference that petitioner could establish non-disclosure through inference, then denied his claim without considering any of petitioner's inference evidence, citing only argument, not offered into evidence, from the State regarding Cuyahoga County Prosecutor's Office practices.

10.  The trial court abused its discretion when it determined that had the evidence been disclosed it cannot be determined that the result of the trial would have been different.

11.  The trial court abused its discretion when it determined that Brady claims relied on admissibility.

12.  The trial court abused its discretion when it denied petitioner Dye's motion to be transported, violating his statutory and constitutional rights to be present.

13.  The State engaged in prosecutorial misconduct.

14.  The trial court abused its discretion when it took four years to render a decision on petitioner's claims

15.  The trial court abused its discretion when it overruled petitioner Dye's motion to supplement.

16.  The trial court abused its discretion when it failed to consider petitioner Dye's claims cumulatively in light of the whole record and in absence of reliable evidence.

## II. Law and Analysis

{¶ 15} As an initial matter, we note that appellant has set forth 16 assignments of error in his brief, which seems implausibly high given that this appeal arises solely from the denial of a petition for postconviction relief. This court has clarified the distinction between assignments of error and issues presented:

> The "Assignments of Error" should designate specific rulings which the appellant challenges on appeal. They may dispute the final judgment itself or other procedural events in the trial court. The "Statement of Issues" should express one or more legal grounds to contest the procedural actions challenged by the assigned errors. They may subdivide questions presented by individual assigned errors, or they may be substantially equivalent to the assigned errors.

*N. Coast Cookies, Inc. v. Sweet Temptations, Inc.*, 16 Ohio App.3d 342, 343-344 (8th Dist. 1984).

{¶ 16} For ease of analysis and discussion, we will examine appellant's assignments of error out of order, beginning with the fifth assignment of error.

{¶ 17} In his fifth assigned error, appellant argues that the trial court abused its discretion when it determined in its judgment entry that petitioner did not establish that he was unavoidably prevented from discovering the evidence within the statutory timeframe.

{¶ 18} Typically, a reviewing court reviews a trial court's decision granting or denying a petition for postconviction relief for an abuse of discretion. *State v. Gondor*, 2006-Ohio-6679, ¶ 58. However, whether the trial court possessed subject-matter jurisdiction to entertain an untimely petition for postconviction

relief is a question of law, which we review de novo. *State v. Apanovitch*, 2018-Ohio-4744, ¶ 24.

{¶ 19} Appellant implicitly concedes that his petition for postconviction relief was untimely. However, R.C. 2953.23(A)(1) allows the trial court to consider his untimely petition if he (a) was "unavoidably prevented from discovery of the facts" upon which his claim relies or he is asserting a claim based on a new, retroactively applicable federal or state right recognized by the United States Supreme Court after his petition became untimely; and (b) shows by clear and convincing evidence that no reasonable factfinder would have found him guilty "but for constitutional error at trial." R.C. 2953.23(A)(1)(a)-(b).

{¶ 20} Because the timeliness requirement of R.C. 2953.23 is jurisdictional, a trial court does not have jurisdiction to entertain an untimely filed petition for postconviction relief that does not meet the exceptions set forth by R.C. 2953.23(A)(1). *See State v. Kleyman*, 2010-Ohio-3612, ¶ 35 (8th Dist.).

{¶ 21} Appellant does not claim the existence of a new right in his petition; accordingly, we will only focus on whether he has demonstrated that he was unavoidably prevented from discovering the additional facts he raises in his petition.

{¶ 22} For the trial court to have jurisdiction to entertain the claims alleged in his untimely postconviction petition, appellant first had to establish that he was "unavoidably prevented from discovery of the facts" on which he relies. R.C. 2953.23(A)(1)(a). To meet this standard, courts in Ohio have held that a defendant ordinarily must show that he was unaware of the evidence upon which he is relying

and that he could not have discovered the evidence by exercising reasonable diligence. *See State v. Harrison*, 2018-Ohio-1396, ¶ 6 (8th Dist.).

{¶ 23} In *State v. Bethel*, 2022-Ohio-783, however, the Supreme Court of Ohio recognized that unlike other evidence supporting a petition for postconviction relief, "criminal defendants have no duty to 'scavenge for hints of undisclosed *Brady* material.'" *Id.* at ¶ 24. In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court of the United States recognized that the prosecution has an affirmative duty to disclose evidence that is favorable to the accused and material to the accused's guilt or punishment. *Id.* at 87; *see also Kyles v. Whitley*, 514 U.S. 419, 432 (1995). That "duty encompasses impeachment evidence as well as exculpatory evidence," and "it encompasses evidence 'known only to police investigators and not to the prosecutor.'" *Strickler v. Greene*, 527 U.S. 263, 280-281, 286 (1999), quoting *Kyles* at 438. The *Brady* rule applies regardless of whether evidence is suppressed by the State willfully or inadvertently. *Strickler* at 282.

{¶ 24} The *Bethel* Court explained that in the context of an alleged *Brady* violation, the defendant "is not required to show that he could not have discovered suppressed evidence by exercising reasonable diligence." *Id.* at ¶ 25, citing *Strickler* at 282-285. Rather, a defendant satisfies the "unavoidably prevented" requirement contained in R.C. 2953.23(A)(1)(a) by establishing that the prosecution suppressed the evidence on which the defendant relies. *Id.*[1]

---

[1] *Bethel* was decided prior to the trial court's denial of appellant's petition; however, it does not appear that the trial court utilized *Bethel* in analyzing the

{¶ 25} Appellant presented an affidavit in support of his petition, which contained the following statements relevant to the claimed exculpatory evidence:

3. Prior to my trial, and throughout my trial, my lawyers went over my case and my discovery numerous times.

4. Recently, I received a police report through a public records request. This report was authored by Cleveland Police Officer Valerie Banks and is dated October 2, 1999. The police report states that a black female witnesse[d] the shooting charged in this case.

5. The police report indicates that within minutes of receiving a call for shots fired, Officer Banks arrived on scene and was flagged down by a black female, [w]ho stated that "[redacted juvenile] was playing with the gun and accidentally shot the victim in the head." The report also contained [a] description of the juvenile that is consistent with me at that time.

6. I have never seen this police report prior to 2018. I have never been made aware of the contents of this police report prior to 2018.

7. In 2019 I received a report including statements by Mason Jolly and "Butter." I had never heard of Butter making any statement.

8. In 1999, I knew Mason Jolly was there when Greg Smith got shot. I told the police he was there in my statement. I never knew that the police talked to him. I think my lawyer would have talked to me about that.

9. I have always maintained, and asserted at trial, that the gun went off accidentally and regrettably struck the victim, who was a friend of mine.

10. I am certain that my attorneys would have shown me this report or discussed it with me if they had known about it or had been provided with it.

11. This police report was never referenced in the trial.

_____

"unavoidably prevented" exception. We will examine the trial court's jurisdiction to consider appellant's petition in light of *Bethel*.

{¶ 26} Appellant alleges that the contents of the police report and additional witness statements were not made available to *him* before his trial; however, there is no requirement for this to have occurred. *State v. Bluford*, 2004-Ohio-4088, ¶ 26 (8th Dist.); *State v. Jones*, 2016-Ohio-5387, ¶ 9 (10th Dist.). Because appellant may not have been privy to the exchange of discovery, his claim depends on his trial counsel's knowledge. While appellant alleges that his counsel "would have discussed it with [him]" or would have provided him with it, appellant failed to substantiate such a claim beyond his self-serving speculation. He merely offers his unverified belief that his counsel was unaware of the existence or the contents of the police report before trial because he "thinks" they would have talked to him about an additional witness statement and he is "certain" that they would have shown the police report to him or discussed it with him.[2]

{¶ 27} "Unsubstantiated, self-serving allegations are not sufficient to demonstrate entitlement to an evidentiary hearing." *State v. Walter*, 2020-Ohio-6741, ¶ 9 (8th Dist.), citing *State v. Hill*, 2019-Ohio-365, ¶ 70 (1st Dist.). *See Bethel*, 2022-Ohio-783 (petitioner offered affidavits of trial counsel stating they did not know about the evidence prior to trial); *State v. Kennedy*, 2024-Ohio-66 (8th Dist.) (appellant's trial counsel did not aver in his affidavit that the defense was unaware of police reports); *but see State v. Hale*, 2023-Ohio-3894, ¶ 37 (8th Dist.) ("Most

---

[2] There are references in the transcript to the fact that lead trial counsel for appellant is deceased and that appellant's other trial attorney was possibly disbarred and/or is unreachable out of state; however, this information was only offered during counsel's arguments. No evidence reflecting either attorney's whereabouts was offered with appellant's petition.

significantly, the motion for leave is supported by the affidavits of Hale's former trial counsel . . . and former postconviction counsel . . . ."); *State v. Larkins*, 2003-Ohio-5928 (8th Dist.) (finding *Brady* violation where defense counsel testified that he had never been provided certain evidence at the time of trial and that had he known the facts contained in the police report, he would have followed up on them in his own investigation and incorporated the evidence into the defense).

{¶ 28} After careful consideration of the record and materials attached to appellant's untimely petition for postconviction relief, we find no evidentiary basis to conclude that the police reports and witness statements underlying the claimed *Brady* violation were willfully or inadvertently suppressed by the prosecution in this case. Appellant therefore failed to demonstrate that he was unavoidably prevented from discovering the evidence, and the trial court lacked jurisdiction to rule on his petition.

{¶ 29} Appellant argues in his second assignment of error that the trial court essentially determined that it had jurisdiction when it held a hearing and entertained appellant's petition. While the court did not declare on the record that appellant was unavoidably prevented from discovering the claimed evidence, appellant argues that by holding a hearing on the merits of the petition, the court implicitly made such a determination.

{¶ 30} R.C. 2953.23 provides that a trial court may not *entertain* an untimely petition for postconviction relief unless one of the exceptions in subsection (A) applies. While it did not make the relevant statutory determination on the record,

it does appear that the trial court deemed that it had jurisdiction to proceed with the hearing. Appellant consequently argues that the trial court was not permitted to later reverse this finding and ultimately determine that appellant was not unavoidably delayed and therefore that it was without jurisdiction to entertain the petition.

{¶ 31} We note that at no point during the hearing or prior to the issuance of its denial of the petition did the trial court make a ruling on the record that appellant had demonstrated the unavoidably prevented exception and that it had jurisdiction. Regardless, any such finding, even an implicit finding, would have been interlocutory in nature, and as such, the court was permitted to reconsider its determination. "'It is well established that a trial court has inherent power and authority to reconsider its own interlocutory rulings.'" *Schmidt v. Bankers Title & Escrow Agency, Inc.*, 2007-Ohio-3924, ¶ 7 (8th Dist.), quoting *Goldman v. Transp. Leasing, Inc.*, 1981 Ohio App. LEXIS 10481 (8th Dist. Feb. 19, 1981), citing *Olson v. Watson*, 22 Ohio Law Abs. 118 (2d Dist. 1936).

{¶ 32} In this case, the court did, in fact, reconsider its implicit finding of jurisdiction and determined that appellant had not demonstrated that he was unavoidably prevented from discovering the claimed exculpatory evidence. While the trial court also went on to determine the merits of the petition, it lacked jurisdiction to do so.[3] As noted above, "[t]he time limitation for filing a motion for

---

[3] In its judgment entry denying the petition, the trial court noted that it lacked jurisdiction to entertain the petition but stated that it would "nevertheless [] proceed to

postconviction relief is jurisdictional, and a trial court has no authority to consider an untimely filed petition for postconviction relief absent an exception." *State v. Jones*, 2013-Ohio-3434, ¶ 11 (8th Dist.), citing *State v. Johns*, 2010-Ohio-162, ¶ 8 (8th Dist.); *State v. Hutton*, 2007-Ohio-5443, ¶ 23 (8th Dist.). The trial court did err by holding a hearing when the petition was untimely and appellant had failed to demonstrate an exception under the statute. Rather than ultimately denying the petition, the trial court should have dismissed it for lack of jurisdiction. However, this error is harmless and does not change the outcome of this appeal.

{¶ 33} Appellant's second and fifth assignments of error are overruled. Pursuant to App.R. 12(A)(1)(c), appellant's remaining assignments of error are moot.

### III. Conclusion

{¶ 34} Appellant failed to demonstrate that the claimed exculpatory evidence was willfully or inadvertently suppressed by the prosecution. His petition for postconviction relief was untimely, and he did not demonstrate a statutory exception that would allow the trial court to entertain his petition. The trial court therefore lacked jurisdiction to entertain the petition. All of appellant's assignments of error are overruled, and the judgment of the trial court is affirmed.

{¶ 35} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

---

make findings of facts and conclusions of law to permit an appellate court to examine all possible eventual assignments of error in a single proceeding."

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

FRANK DANIEL CELEBREZZE, III, JUDGE

MICHELLE J. SHEEHAN, P.J., and
ANITA LASTER MAYS, J., CONCUR