[Cite as *State v. Bias*, 2025-Ohio-2653.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 24AP-479 |
| | | (C.P.C. No. 17CR-7003) |
| v. | : | |
| | | (ACCELERATED CALENDAR) |
| Devon D. Bias, | : | |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on July 29, 2025

**On brief:** [*Shayla D. Favor*], Prosecuting Attorney, and *Seth L. Gilbert*, for appellee.

**On brief:** *Devon D. Bias*, pro se.

APPEAL from the Franklin County Court of Common Pleas

DINGUS, J.

{¶ 1} Defendant-appellant, Devon D. Bias, appeals from a judgment of the Franklin County Court of Common Pleas denying his motion for leave to file a delayed motion for new trial. For the reasons that follow, we affirm the judgment of the trial court.

**I. Facts and Procedural History**

{¶ 2} In 2021, the trial court sentenced Bias to an aggregate prison term of 35 years to life, having found him guilty of murder and other charges related to the shooting deaths of Q.S. and S.C. and the attempted shootings of Jar.L., Jaw.L., and E.B. This court provided a comprehensive explanation of the facts supporting Bias's underlying convictions and sentence in *State v. Bias*, 2022-Ohio-4643 (10th Dist.) ("*Bias I*"). The facts and procedural history relevant to Bias's 2024 motion are as follows.

{¶ 3} On the morning of December 4, 2017, police were called to the scene of a shooting where they located the bodies of Q.S. and S.C., as well as an abandoned Honda

CR-V marred with bullet holes and blood. Police collected evidence including shell cases, bullet fragments, and a knit hat that appeared to have been recently dropped on the street. DNA testing linked Bias to the hat.

{¶ 4}   Surveillance footage from a nearby business revealed that a gray Chevy Malibu with temporary tags was present at the shooting. Police located the Chevy Malibu, which was registered to S.K. When police located S.K., she was in the midst of attempting to transport two bags containing firearms and ammunition, including a Glock .40-caliber pistol that was subsequently linked to bullets recovered from the shooting scene. DNA testing linked the Glock to S.K.'s boyfriend, Darnell Vinson. Social media posts and other documentation from the police department's gang unit showed that Bias and Vinson were members of the Deuce Deuce Bloods and had been associated with one another since at least 2012.

{¶ 5}   Meanwhile, the police learned that Q.S. had been in the CR-V with E.B. and brothers Jar.L. and Jaw.L. The police interviewed Jar.L. and Jaw.L. together at the police station, and again at their home. Jaw.L. told police that he had been driving the CR-V that morning, with Jar.L. in the front seat and Q.S. and E.B. in the backseat. While he was driving, Jaw.L. followed a gray Chevy Malibu for a short distance. He said that someone leaned out of the passenger side window of the Malibu and shot repeatedly at the CR-V with a semi-automatic rifle.

{¶ 6}   As this court explained in *Bias I*,

> Jaw.L. described the shooter as a thin, African American male with "dark skin" and "chin hair," wearing a black hoodie and "a hat, a black skull cap type thing." (Jan. 3, 2018 Tr. at 480; State's Ex. Y-2.) Jaw.L. had never seen the shooter before; however, he got a glimpse of his face and noted that his complexion was a shade or two darker than his own.

*Bias I* at ¶ 5. Police included a picture of Bias as the sixth image in a photo array that they showed to Jaw.L.:

> Jaw.L. averred, "I want to say it's #6, because when the dude came out [of] the car—he's just got his features. I got a glimpse of his face before I went down because I had a little time to look. . . . I don't want to accuse nobody, but I think it's #6." (State's Ex. Y-3.) . . . According to Jaw.L., "[the shooter]

> took 4 or 5 seconds, so I got to look at his face a little bit before
> he started shooting." *Id.*

*Bias I* at ¶ 18. Jaw.L.'s brother, Jar.L., stated that he would not be able to identify the shooter, and so police did not conduct a photo array with Jar.L.

{¶ 7} Due to the risk that the witnesses could be harmed or coerced by members of Bias's gang, the Deuce Deuce Bloods, the state initially withheld evidence that revealed identities of any witnesses. The state later provided materials to the defense in discovery with the designation of "counsel only." Video recordings of the police interviews with Jar.L and Jaw.L. were included in the counsel-only discovery materials.

{¶ 8} Closer to the date of trial, Jaw.L. received death threats by phone and mail. Jaw.L. refused to appear at Bias's trial for fear of getting killed, and told the police that they should throw him in jail if they needed to, but he would not testify. The state moved to admit the video recordings of Jaw.L.'s statements to police under the forfeiture-by-wrongdoing exception to hearsay in Evid.R. 806(B)(6). The trial court conducted a hearing and granted the motion. Accordingly, the video recordings of the police interviews with Jaw.L.—in which police also interviewed Jar.L.—were admitted into evidence.

{¶ 9} Because the interview videos were over four hours long, the state and defense agreed to play only portions of the videos at trial. Although the videos played at trial were focused on Jaw.L.'s statements, the state played some of Jar.L.'s statements as well, given that the brothers were interviewed together. For example, the state played a portion of the video in which Jar.L. and Jaw.L. disagreed about whether the shooter had leaned out through the front passenger window or the rear passenger window.

{¶ 10} During closing arguments, the defense focused on the brothers' disagreement over the exact location of the shooter to support the argument that Jaw.L.'s identification of Bias was not reliable. The defense also focused on Jaw.L.'s interview statement that the shooter was "a shade or two darker than himself," and stressed that Bias's complexion was actually "lighter than [Jaw.L.], not a shade or two darker." (Tr. at 688.) The defense argued that Jaw.L.'s statements were not adequate to establish that Bias had been at the scene of the shooting and urged the court to conclude that the state had not met its burden of proof.

{¶ 11} The trial court found Bias guilty on all counts at the end of the April 2021 trial, and imposed Bias's 35 years-to-life prison term in May 2021. Bias appealed his conviction and sentence, and this court affirmed. *Bias I* at ¶ 161.

{¶ 12} Over three years later, in July 2024, Bias filed a motion for leave to file a delayed motion for new trial based on the discovery of new evidence. Bias did not attach any affidavits or other evidence to the motion. The alleged new evidence was a portion of the video recording of the December 4, 2017 police interview of Jar.L and Jaw.L. at their home, during which Jar.L. agreed with Jaw.L.'s description of the shooter as "darker skinned." (July 1, 2024 Mot. for Leave at 2.) This portion of the recording was admitted into evidence as part of exhibit Y-2, but it was not played during Bias's trial.

{¶ 13} Bias stated in his motion that he had only recently gained access to the full videos during federal habeas proceedings. Bias argued that he had been unavoidably prevented from discovering the cited portion of exhibit Y-2 because it had not been played during trial, and because "Bias was under the impression that he needed an attorney to be granted the ability to view these videos in whole." *Id.*

{¶ 14} The trial court summarily denied the motion for leave. Bias's timely appeal is now before this court.

## II. Assignments of Error

{¶ 15} Bias assigns the following three assignments of error for our review:

> [I.] The trial court abused its discretion when denying defendant-appellant's motion for new trial based on newly discovered evidence under Crim.R. 33(B)(2) without first holding an evidentiary hearing, depriving defendant-appellant of his rights under the due process and confrontation clause of the Sixth and Fourteenth Amendment to the United States Constitution.

> [II.] Defendant-appellant was denied his right to effective assistance and compulsory process as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, due to trial counsels [sic] failure to inform defendant-appellant of the exculpatory witness statement (in question) that was counsel only; and failing to compel a favorable witness to appear at trial.

> [III.] The photo array procedure in defendants [sic] case violated defendant-appellant's right to due process under the

Fouteenth [sic] Amendment based on new evidence on which he now relies.

## III. Discussion

{¶ 16} In his first assignment of error, as well as the first portion of his second assignment of error, Bias contends that the trial court should have granted his motion for leave to file a motion for new trial because he was unavoidably prevented from discovering the full video of Jar.L and Jaw.L.'s police interview, including a portion that was in the record but was not introduced into evidence at trial.

{¶ 17} Under Crim.R. 33(A), a trial court may grant a new trial for certain "causes affecting materially the defendant's substantial rights," including "[w]hen new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at the trial." Crim.R. 33(A)(6). A motion for new trial based on newly discovered evidence must be filed within 120 days of the jury or trial court's verdict. Crim.R. 33(B).

{¶ 18} When, as in this case, a defendant finds himself outside the 120-day limit, he must first request leave to file a motion for new trial. *Id*. A defendant's motion for leave must provide "clear and convincing proof that the defendant was unavoidably prevented from the discovery of the evidence upon which he must rely . . . within the one hundred twenty day period." *Id*. To establish unavoidable prevention from discovery, a defendant must show that "he or she had no knowledge of the existence of the new evidence and, in the exercise of reasonable diligence, could not have learned of its existence within the time prescribed for filing a motion for new trial." *State v. Lundy*, 2020-Ohio-1585, ¶ 11 (10th Dist.).

{¶ 19} At the leave stage, the trial court does not consider the merits of the new-trial motion and focuses solely on whether the defendant met his burden of proving unavoidable prevention. *State v. Hatton*, 2022-Ohio-3991, ¶ 30. A defendant is not entitled to a hearing on a motion for leave unless he submits evidence which, on its face, supports the claim that he was unavoidably prevented from timely discovering the evidence that he wants to present at a new trial. *State v. Ambartsoumov*, 2013-Ohio-3011, ¶ 13 (10th Dist.). If neither the motion nor the attached evidence establishes prima facie unavoidable prevention, a trial court may summarily deny the motion without a hearing. *Id*. We use an

abuse-of-discretion standard when reviewing a trial court's denial of motion for leave to file a delayed motion for new trial. *Hatton* at ¶ 29.

{¶ 20} Bias asserts that he was unavoidably prevented from learning about Jar.L.'s police-interview statement because the video recording of the interview was designated as "counsel only." However, we have repeatedly held that evidence is not new for purposes of Crim.R. 33(A)(6) where it was designated "counsel only" and was in defense counsel's possession but not available to the defendant himself. *State v. Jones*, 2016-Ohio-5387, ¶ 9 (10th Dist.); *State v. D.M.*, 2015-Ohio-4257, ¶ 11 (10th Dist.). Moreover, although the video was designated as "counsel only" during the discovery stage to avoid disclosing the witnesses' identities, the video was admitted into evidence at trial. And because the state and defense counsel stipulated to playing portions of the brothers' joint interview at trial, Bias was personally aware of the existence of Jar.L.'s police interview.

{¶ 21} Bias additionally asserts that he was unavoidably prevented from learning of Jar.L.'s statement because the state violated *Brady v. Maryland*, 373 U.S. 83 (1963). There is no *Brady* issue where the state discloses evidence in time for the defense to effectively use it at trial. *State v. Iacona*, 93 Ohio St.3d 83, 100 (2001). The state provided the video recording of Jar.L.'s interviews to the defense before trial, and so *Brady* is not implicated here.

{¶ 22} Bias failed to attach an affidavit or any other evidence to support his motion for leave to file a delayed motion for new trial. For this reason alone, it was within the trial court's discretion to summarily deny Bias's motion for leave. *Ambartsoumov* at ¶ 13. Moreover, because Bias's evidence was in the trial record, it was "discovered" and could have been "produced at the trial" pursuant to Crim.R. 33(A)(6); it was not new evidence that Bias was unavoidably prevented from discovering until three years after his trial. We therefore reject Bias's first assignment of error and the first portion of his second assignment of error.

{¶ 23} In the second portion of Bias's second assignment of error, as well as his third assignment of error, Bias asserts that the trial court should have granted his motion for new trial because trial counsel was ineffective in failing to call Jar.L. as a witness and because Jaw.L.'s pre-trial identification of Bias was inadmissible. Both arguments relate to the merits of Bias's motion for new trial rather than his motion for leave. When a defendant

asks the court for leave to file a delayed motion for new trial under Crim.R. 33(B), "the trial court may not consider the merits of the proposed motion for a new trial until after it grants the motion for leave." *Hatton*, 2022-Ohio-3991, at ¶ 30. Because the trial court denied Bias's motion for leave, it had no authority to reach the merits of Bias's motion for new trial. The trial court did not err by failing to grant Bias's requested relief, and we therefore reject the remaining portion of Bias's second assignment of error and his third assignment of error.

## IV. Disposition

{¶ 24} Having overruled Bias's three assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

JAMISON, P.J., and EDELSTEIN, J., concur.

———————————